IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRUCE M. SAVAGE,

    Plaintiff,

v.

GEORGIA DEPARTMENT OF
TRANSPORTATION,

    Defendant.

CIVIL ACTION

No. 1:10-CV-2459-TWT-GGB

## **FINAL REPORT AND RECOMMENDATION**

This employment discrimination case comes before the Court on the Georgia Department of Transportation's ("GDOT's") Motion for Summary Judgment (Doc. 43). Plaintiff Bruce M. Savage has filed an amended complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging race discrimination in employment. For the reasons discussed below, I **RECOMMEND** that GDOT's motion for summary judgment be **GRANTED**.

## **I.**    **FACTS**

Plaintiff Bruce M. Savage ("Plaintiff" or "Savage"), an African-American male, is currently employed by GDOT. Plaintiff began his employment with GDOT in 1988. From 1999 until October 16, 2009, Plaintiff held the position of District Right of Way ("ROW") Team Manager, pay grade 16. As ROW Team Manager, Plaintiff's primary

job duty was supervising employees in the District Seven ROW office, one of whom was Semika Harwell ("Harwell").

On or about August 25, 2009, Harwell filed a complaint with GDOT management against Plaintiff. In her complaint, Harwell revealed that she had been in a relationship with Plaintiff since before December 2007. She stated that on May 17, 2009, she requested of Plaintiff that they end their relationship, but Plaintiff continued to call and text her. Harwell's complaint included a three-page recitation of facts complaining about Plaintiff's conduct towards her. (Doc. 43-12). Among other things, Harwell complained that after her intimate relationship with Plaintiff had ended, Plaintiff continued to keep close tabs on Harwell's location and activities within the office, culminating in an outburst towards her at a staff meeting for chewing candy too loudly. (Id.).

Georgia Department of Transportation Policy 2255-1, *Standards of Conduct*, provides, in part, as follows, and expressly prohibits

> Intimate relationships between managers or supervisors and their subordinate staff members, through any line of authority, based on the significant potential for such relationships to present an actual or perceived conflict of interest. Employees who enter into such relationships are expected to notify higher management of the need for one or both of the employees in the relationship to be reassigned, so that a line relationship no longer exists between the employees.

2

> …
>
> The Department reserves the right to take appropriate disciplinary action, to decline to appoint or promote an applicant/employee, and to reassign an employee in order to avoid or eliminate a conflict of interest or the appearance of a conflict of interest based on any relationship of an employee to another employee.

(Doc. 43-14 ¶¶ 3-4).

Defendant's EEO office conducted an investigation into Harwell's allegations. Seven employees, including Harwell and Plaintiff, were interviewed. (Doc. 51-4). During the investigation, Plaintiff admitted that he had been engaged in an intimate relationship with Harwell from late 2007 until approximately July or August 2009. He admitted that their relationship made it difficult for him to supervise Harwell and that he had become afraid to say anything to her. He stated that he allowed her to work on her Ph.D. during working hours because she threatened to reveal their relationship. (Doc. 51-4 at 4-5).

Plaintiff was suspended with pay during the investigation. The investigation concluded with a finding that Harwell's complaints of harassment and hostile work environment were without merit. (Doc. 50 ¶¶ 5-6).

On September 28, 2009, GDOT wrote to Plaintiff informing him that he would be demoted to Assistant ROW Team Manager, pay grade 15, and transferred to another

3

district (District Six) "based on your unfitness to perform assigned duties as a Team Leader and your misconduct for failure to comply with Department Policy 2255-1, *Standards of Conduct*." (Doc. 43-7 at 2). The letter included the following statements:

> Your actions compromised your ability to effectively manage Ms. Harwell, especially when it was determined your relationship was ended. You stated you allowed Ms. Harwell to work on her Ph.D. during work time and you were afraid to say anything to her. You simply destroyed the supervisor-employee professional work relationship .... Your serious violation of Department policy has resulted in your failure to fulfill the supervisory responsibilities of your position as a District Right of Way Team Manager creating problems within your assigned work unit.

(Id. at 3). The transfer was effective October 1, 2009; the demotion was effective October 16, 2009. (Id. at 2; Doc. 43-8 at 2).

Plaintiff requested that he be placed in the newly vacant ROW Team Manager position in District Six, the same position from which he had been demoted (in District Seven). (Doc. 43-5 at 53; Doc. 43-8 at 2). Plaintiff was notified that he would not be interviewed for the position because "[b]ased on the fact that you were recently demoted from the same title and pay grade in District Seven because of 'unfitness to perform assigned duties as Team Leader' and misconduct for failure to comply with Department Policy 2255-1, Standards of Conduct, it is not in the best interest of the Department for you to interview at this time." (Doc. 43-9 at 2). Plaintiff is currently

4

employed by GDOT as Assistant ROW Team Manager in District Six. (Doc. 43-2 ¶ 11).

In Plaintiff's Amended Complaint, Plaintiff alleges that the ROW Team Manager position in District Six was awarded to Charles Workman, a lesser qualified white male. (Doc. 26, Am. Compl., ¶ 26). Plaintiff argues that GDOT discriminated against him, on the basis of race, with regard to his demotion/transfer and decision that he was ineligible for a promotion.

Plaintiff argues that he was treated more harshly than similarly-situated Caucasian employee Kevin VanHouten, a manager in the position of Assistant Area Engineer. On October 7, 2008, GDOT received an anonymous letter stating that GDOT employees Kevin VanHouten ("VanHouten") and Amanda McChargue ("McChargue") were involved in sexual conduct during office hours. (Doc. 47, Deposition of Louis Walker, at 9, 14; Doc. 51-4 at 15). Management learned that VanHouten and McChargue had been in a consensual relationship that dated back to at least the fall of 2008. During that time period, McChargue worked under VanHouten's general supervision. (Doc. 51-4 at 10). VanHouten and McChargue were married on September 19, 2009.

5

Before GDOT discovered VanHouten's consensual relationship with McChargue, VanHouten had applied several times and was interviewed for a promotion to Senior Program Manager, a position outside McChargue's chain of command. (Doc. 43-11 at 11, 17-18). VanHouten eventually received the promotion, which entailed moving from a pay grade 15 to a pay grade 19. Although it is not clear from the record whether VanHouten received the promotion after GDOT learned of his relationship with McChargue, for purpose of this ruling, I will assume that GDOT learned of the relationship between VanHouten and McChargue before it promoted VanHouten. On October 22, 2009, VanHouten was notified that he would be demoted to Associate Project Manager, pay grade 18, for failure to timely notify his supervisor of his relationship with McChargue. (Doc. 51-4 at 10).

## II. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries its burden by showing the Court that there is "an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that

6

precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III. DISCUSSION

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII employment discrimination claim either by providing direct evidence of discrimination or by showing circumstantial evidence of discrimination. Where, as here, there is no direct evidence,

7

a claim of discrimination is proven by circumstantial evidence and is generally evaluated under the burden-shifting McDonnell Douglas framework. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002); see also Rainey v. Holder, 412 F. App'x 235, 237 (11th Cir. 2011).

### A. Prima Facie Case

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. Once the plaintiff employee has established the prima facie case, the burden shifts to the defendant employer to proffer a legitimate, nondiscriminatory reason behind the complained-of employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). If the employer proffers a legitimate, nondiscriminatory reason for the employment action, the burden shifts again to the employee to show that the employer's proffered reason is a pretext for a discriminatory motive. Id. at 256.

A plaintiff establishes a prima facie case of discrimination by showing that: "(1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to [an] adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." Crawford v. Carroll, 529 F.3d

8

961, 970 (11th Cir. 2008)(citing Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)(per curiam)).

The fourth element of the prima facie case for discrimination may be established when a plaintiff points out "comparators" who are "nearly identical" to the plaintiff, aside from being outside the plaintiff's class and being treated more favorably than the plaintiff. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). "We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999). Comparators must be situated similarly to the plaintiff in "all relevant respects" and they must be "accused of the same or similar conduct [but] disciplined in different ways" in order to show that the employer has taken a discriminatory action. Knight, 330 F.3d at 1316; Burke-Fowler, 447 F.3d at 1323.

Plaintiff relies on VanHouten as his comparator to create an inference of discrimination. A reasonable jury could find that Plaintiff was treated more harshly than VanHouten. However, Plaintiff has not met his burden of showing that he and VanHouten were similarly situated. While VanHouten had a consensual relationship with his subordinate, the circumstances surrounding VanHouten's relationship with

AO 72A
(Rev.8/82)

McChargue were quite different than the circumstances of Plaintiff's relationship with Harwell and the results of that relationship.

VanHouten's relationship with McChargue did not result in any allegations of sexual harassment or any issues with VanHouten's work performance as a supervisor. By contrast, Plaintiff's relationship with Harwell negatively affected Plaintiff's ability to manage Harwell's work. During his interview with the EEO personnel who investigated Harwell's complaint of sexual harassment, Plaintiff admitted that he had been afraid to say anything to Harwell while he was her supervisor because she threatened to disclose their relationship. Plaintiff stated that he "had to try and communicate to Ms. Harwell through other people." (Doc. 51-4 at 4). Plaintiff also admitted that he allowed Harwell to work on her Ph.D in the office because she was holding over his head telephone records that would reveal their relationship. (Id. at 5).

Importantly, VanHouten was not *accused* of the same level of misconduct of which Plaintiff was accused. Plaintiff was accused of "unfitness to perform assigned duties" by GDOT. GDOT's letter informing Plaintiff of his demotion specifically referred to Plaintiff's inability to effectively manage Harwell and stated, "Your serious violation of Department policy has resulted in your failure to fulfill the supervisory responsibilities of your position ...." (Doc. 43-7 at 3). VanHouten did not receive

10

similar criticism and there is no indication that he deserved the same level of criticism that Plaintiff received.

In determining whether a comparison to other employees establishes an inference of discrimination, the court must look to whether Plaintiff and the purported comparators were "'involved in *or accused of* similar conduct but received disparate discipline." Horn v. UPS, Inc., 433 F. App'x 788, 795 (11th Cir. 2011)(citing Burke-Fowler, 447 F.3d at 1323). In Horn, the court found that a purported comparator was not similarly situated to the plaintiff, in part, because the comparator had not been involved in or accused of sexual harassment. The court rejected the plaintiff's argument that he had refuted the sexual harassment charge, finding that the district court had properly focused on the employer's *accusations* for purpose of determining whether the plaintiff had established a prima facie case. Id.

Here, the comparator presented by Plaintiff was not involved in or accused of misconduct that was "nearly identical" to his. Because Plaintiff has failed to establish valid comparators and has presented no other circumstantial evidence suggesting racial discrimination, Plaintiff has not established a prima facie case of race or promotion discrimination. See Burke-Fowler, 447 F.3d at 1325 (citing Joe's Stone Crabs, 220 F.3d at 1286).

11

## B. Legitimate Nondiscriminatory Reason and Pretext

Even assuming that Plaintiff had established a prima facie case of discrimination, GDOT has articulated a legitimate nondiscriminatory reason for his demotion/transfer and for why he would not be permitted to interview for the open ROW Team Leader position in District Six. GDOT has stated that Plaintiff was demoted/transferred and ineligible to interview because of his unfitness to perform his assigned duties as a team leader and his misconduct for failure to comply with Department Policy 2255-1, Standards of Conduct. With regard to GDOT's refusal to interview him for the same position in District Six that he had just been demoted from in District Seven, Plaintiff was expressly notified that although he met the technical qualifications for the vacant ROW team manager position, his recent demotion for misconduct and "unfitness to perform assigned duties" made it "not in the best interest of the Department for you to interview at this time." (Doc. 43-9 at 2). Plaintiff has not "demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could find them unworthy of credence." Ash v. Tyson Foods, Inc., ___ F.3d ___, 2011 WL 6270741, at *7 (11th Cir. Dec. 16, 2011)(quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)(quotation marks

omitted)). In sum, Plaintiff has not satisfied his burden to show that GDOT's proffered reasons were pretextual. Accordingly, I find that summary judgment for GDOT is appropriate.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff has failed to establish a prima facie case of race and promotion discrimination, and a reasonable jury could not find that GDOT's reasons for its employment actions against Plaintiff were pretextual. Therefore, I **RECOMMEND** that GDOT's Motion for Summary Judgment (Doc. 43) be **GRANTED**.

**IT IS SO RECOMMENDED**, this 27th day of December, 2011.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)